| | |
|---|---|
| Roller Bearing Company of America, Inc.,<br>*Plaintiff*,<br><br>*v.*<br><br>American Software, Inc., and American Software<br>USA, Inc.,<br>*Defendants*. | Civil No. 3:07cv1516 (JBA) |

**RULING ON PLAINTIFF'S MOTION FOR LEAVE
TO FILE SECOND AMENDED COMPLAINT AND
DEFENDANTS' MOTION TO DISMISS OR TRANSFER**

Plaintiff Roller Bearing Company of America, Inc. ("RBC") brought this action against American Software, Inc. and American Software USA, Inc. (collectively "ASI") seeking a declaratory judgment that RBC had not breached its software licensing agreement with ASI. ASI subsequently filed suit in Georgia state court, claiming RBC breached the licensing agreement. RBC timely removed that action to the United States District Court for the Northern District of Georgia. ASI has now moved to dismiss or transfer this action, arguing that (1) the Georgia action was the first-filed action and should be allowed to proceed, (2) this action should be dismissed as an improper declaratory-judgment action, (3) this action should be transferred to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a), and (4) the claims against American Software, Inc. should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. RBC subsequently filed a Motion for Leave to File Second Amended Complaint on June 2, 2008, seeking to abandon its declaratory-judgment claim and add claims for computer fraud and abuse (pursuant to 18 U.S.C. § 1030), computer crimes (pursuant to Conn. Gen. Stat. § 58-451), unfair trade practices (pursuant to Conn. Gen. Stat. § 41-110a), unlawful tying

(pursuant to 15 U.S.C. § 1), monopoly leveraging (pursuant to 15 U.S.C. § 2), attempted monopolization (pursuant to 15 U.S.C. § 2), copyright misuse (pursuant to 17 U.S.C. § 101 and 15 U.S.C. §§ 1–2), trade secret misuse (pursuant to Conn. Gen. Stat. § 35-50, Ga. Code § 10-1-760, and 15 U.S.C. §§ 1–2) and breach of contract. For the reasons that follow, RBC's motion for leave to amend is granted, and ASI's motion to dismiss or transfer is denied.

## I.    Factual Background for Pending Motions

### A.    ASI's Motion to Dismiss or Transfer

RBC is a corporation organized under the laws of Delaware with its principal place of business in Connecticut. (Am. Compl. ¶ 1.) American Software, Inc. is a corporation organized under the laws of the State of Georgia with its principal place of business in Georgia. (*Id.* ¶ 2.) American Software USA, Inc. is a wholly owned subsidiary of American Software, Inc., organized under the laws of Georgia with its principal place of business in Georgia. (*Id.* ¶ 3.) American Software USA, Inc. and American Software, Inc. are listed with the Georgia Secretary of State's office as having the same registered agent, officers, and address. (RBC's Opp'n Dismiss or Transfer at 7, Ex. D.)

On July 28, 1989, RBC and ASI entered into a Basic License Agreement ("license agreement") in which ASI granted RBC use of the "Company's Standard Application Software System" for a 99-year period for a total license fee of $135,150. ( ¶¶ 7–11, Ex. 1.) RBC timely paid the license fee in full. (*Id.* ¶¶ 9–10.) The license agreement stipulates that it "shall be governed by and construed in accordance with the laws of the State of Georgia" and that the parties shall "be subject to the jurisdictions of the courts in the State of Georgia in connection with any dispute or action relating to [the license agreement]." (*Id.* Ex. 1.) The license agreement does not contain any provision limiting the total number of users

who may access the software.  (*Id.* ¶ 12.)

On October 31, 1996, RBC and ASI entered into Amendment No. 12 to the license agreement allowing RBC to use an upgrade to the software under the license agreement and an "ADDM module," which "allows separate AS/400 computers in different locations to communicate with each other."  (*Id.* ¶¶ 13–15.)  Amendment No. 12 calls for a total license fee of $250,000 for purchase of this new software, which RBC has also paid in full in a timely fashion.  (*Id.* ¶¶ 19–21.)  Amendment No. 12 permits RBC to "use the System set forth on [the] Amendment on unlimited number of AS/400 computers provided [RBC] has less than a total of two hundred-fifty (250) users at all locations and divisions."  (*Id.* ¶ 16.)  Because the preface to Amendment No. 12 states that the Amendment shall apply only to the "Additional Software" identified in Exhibit A to the Amendment, RBC has understood this 250-user limit to apply only to RBC's use of the ADDM module.  (*Id.* ¶¶ 14, 17.)  Amendment No. 12 does not contain any provision that imposes a "per-user fee."  (*Id.* ¶ 22.)  RBC never used the ADDM module.  (*Id.* ¶ 18.)

On August 6, 2007, ASI sent RBC a notice of default asserting that RBC was in default under the license agreement because RBC had 604 users, well in excess of the 250-user limit in Amendment No. 12.  (*Id.* ¶ 26.)  The notice demanded payment of a $3,000 per-user license fee for every user above the 250-user limit and invoiced RBC for the amount of $1,125,720.  (*Id.* ¶ 27.)  The notice also warned RBC that "[i]f this default is not cured in sixty (60) days of your receipt of this letter, RBC will have breached the [license agreement]. In that case, ASI may institute legal action to collect the additional user fee and any other remedy available to it at law and in equity."  (RBC's Opp'n Dismiss or Transfer, Ex. B.)  The accompanying invoice was addressed from American Software, Inc. and requested that

payment of the $1,125,720 fee be remitted to American Software, Inc. (*Id.* Ex. C.) RBC responded to the notice of default on September 18, 2007, and rejected ASI's interpretation of the license agreement, maintaining that the 250-user limit was solely in connection with the ADDM module which RBC never used. (Am. Compl. ¶¶ 28–29.)

RBC filed its declaratory action in Connecticut District Court on October 12, 2007 against American Software, Inc., which was served on October 21, 2007. (RBC's Opp'n Dismiss or Transfer at 4.) The service package sent by certified mail (pursuant to Conn. Gen. Stat. § 33-929(b)) was received by American Software, Inc. on October 26, 2007. (Br. in Supp. of Defs.' Mot. to Dismiss or Transfer.) On October 24, 2007, RBC amended its complaint to add American Software USA, Inc. as a party. (Am. Compl.) American Software USA, Inc. was served on October 25, 2007. (RBC's Opp'n Dismiss or Transfer at 4.)

On October 19, 2007, American Software USA, Inc. brought suit in Georgia state court to collect the license fees referenced in the notice of default. (ASI's Mem. Dismiss or Transfer at 7.) RBC was served on October 23, 2007. (*Id.*) ASI brought its Motion to Dismiss or Transfer on December 14, 2007.

**B.    RBC's Motion for Leave to File Second Amended Complaint**

RBC represents that it learned of certain facts subsequent to filing its opposition to ASI's Motion to Dismiss or Transfer which form the basis for its motion to amend its complaint. (RBC's Mem. Leave to Amend at 3.) RBC now alleges that ASI, without RBC's written consent, inserted an "Undisclosed Disabling Code" or "logic bomb" in the ASI software licensed to RBC, which will disable the ASI software and the computer on which it operates if the software is relocated to any computer outside the RBC mainframe. (2d Am.

Compl. ¶¶ 17–18.) Following RBC's discovery of the logic bomb, RBC alleges that ASI has failed to deactivate the source code and will allow it to go off automatically if the ASI software is relocated to any computer other than the RBC mainframe unless RBC pays ASI a "Deactivation Fee." (*Id.* ¶¶ 19–20.) Disabling the ASI software or the computer on which it is installed would disable RBC's business. (*Id.* ¶ 14.) The RBC mainframe on which RBC runs the ASI software is near capacity and must be replaced soon, otherwise RBC risks a shutdown. (*Id.* ¶ 15.) The license agreement calls for payment of an "Upgrade Fee" when the ASI software is relocated. (*Id.* ¶ 21.) Rather than quote RBC this upgrade fee, ASI has allegedly demanded payment of the deactivation fee in order to permit relocation of the ASI software but has not specified the amount of the deactivation fee other than to say it "would run in the hundreds of thousands of dollars." (*Id.* ¶¶ 25–26.)

## II. Motion for Leave to File Second Amended Complaint

Previously amended pleadings may be subsequently amended only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a). In the absence of consent, "[t]he court should freely give leave when justice so requires." *Id.* Leave should be denied only upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). The objective served by freely allowing amendments is to enable a party "to assert matters that were overlooked or were unknown . . . at the time . . . [of the] original complaint or answer." *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 703 (2d

Cir. 1985).[1]

RBC's Proposed Second Amended Complaint asserts matters that were unknown to RBC as of the date of RBC's Amended Complaint (the planting of the "logic bomb") and events that have happened since the date of RBC's Amended Complaint (ASI's allegedly "fraudulent and extortionate acts" in exploiting the "logic bomb" for leverage with RBC). These matters pertain to the original claim insofar as they concern the software and license agreement at issue in the Amended Complaint. The claims for relief, however, are different in that RBC is no longer seeking only declaratory relief but affirmative relief such as compensatory damages, punitive damages and injunctive relief related to the new causes of action (2d Am. Compl. ¶ 30.)

### A.  RBC's Motion For Leave Is Not Premature

In its Opposition to RBC's Motion for Leave to File Second Amended Complaint, ASI claims that "[RBC's] motion is premature given [ASI's] pending motion to dismiss [and ASI thus] urge[s] the Court to deny [RBC's] motion with leave to re-file after [ASI's] motion to dismiss is ruled upon." (ASI's Opp'n Leave to Amend at 1–2.) ASI cites no authority in support of this position, and does not equate this claimed prematurity with a risk of "undue prejudice" to ASI.

Contrary to ASI's position, there is no recognized rule under which a pending

---

[1] "[T]ransactions or occurrences or events" that were not overlooked or unknown at the time of the original pleading but "have happened since the date of the pleading sought to be supplemented" are more appropriately incorporated into a supplemental, rather than amended, pleading. Fed. R. Civ. P. 15(d); *Bornholdt v. Brady*, 869 F.2d 57, 68 (2d Cir. 1989). But this imperfect distinction is inconsequential given that the standards for permitting additional pleading under Rule 15(a) and Rule 15(d) are the same. *Katzman v. Sessions*, 156 F.R.D. 35, 38 (E.D.N.Y. 1994). The Court will treat RBC's motion as it is styled—as a motion for leave to amend.

motion to dismiss renders premature any motion for leave to amend under Rule 15(a). Such a rule would appear to contravene the principle that leave to amend should be freely given. *See Foman*, 371 U.S. at 182. When "a plaintiff amends its complaint while a motion to dismiss is pending," which happens "frequently," the "court then has a variety of ways in which it may deal with the pending motion [to dismiss], from denying the motion as moot to considering the merits of the motion in light of the amended complaint." *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 79–80 (D. Conn. 1994). Because a motion to dismiss is not considered a "responsive pleading" for Rule 15 purposes, an amended complaint filed "as a matter of course" pursuant to Rule 15(a) renders moot a motion to dismiss directed at the original complaint. *Chodos v. F.B.I.*, 559 F. Supp. 69, 70 n.2 (S.D.N.Y. 1982), *aff'd,* 697 F.2d 289 (2d Cir. 1982). Where the proposed amendment requires leave of court, the preferred course is to grant leave to amend even if doing so renders moot the motion to dismiss, rather than granting the motion to dismiss and rendering moot the motion for leave. *See, e.g.*, *Pure Country, Inc. v. Sigma Chai Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002) (reversing district court's denial of plaintiff's motion for leave to amend complaint, holding that the motion for leave rendered moot the pending motion to dismiss rather than vice versa).

The timing of a motion for leave is one of the factors to be considered in assessing whether leave to amend should be granted. But because a court may grant a party leave to amend at any stage of the litigation, such a motion is not unripe simply because a motion to dismiss is also pending. Thus, it is not appropriate to deny RBC's motion for leave as premature.

## B.      Factors Impacting Consideration of Request for Leave to Amend

### 1.      Undue Delay and Undue Prejudice to the Opposing Party

The "most important factor" in the Rule 15(a) analysis is whether the opposing party would be prejudiced by the proposed amendment. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). This inquiry is "often intertwined" with the consideration of whether there was undue delay on the part of the movant: a long delay is more likely to be found prejudicial. *Evans v. Syracuse City School Dist.*, 704 F.2d 44, 47 (2d Cir. 1983).

A sharp change in litigation strategy after the non-moving party has devoted considerable time and expense to discovery, motion practice, and other proceedings in preparation for trial can constitute prejudice. *Evans*, 704 F.2d at 47 (citing *Nevels v. Ford Motor Co.*, 439 F.2d 251, 257 (5th Cir. 1971) (holding that allowing amendment to add *res judicata* defense after pretrial stage would be prejudicial)); *Fluor*, 654 F.2d at 856 (holding district court abused discretion in not allowing amendment where no trial date had been set, no motion for summary judgment motion had been filed, and the proposed amendment would not involve "a great deal of additional discovery"); *McDonnell*, 620 F. Supp. at 156 (finding prejudice to plaintiff where he had engaged in comprehensive and expensive discovery, motion practice and trial preparation).

But while the addition of a new claim or a change in theory of recovery through amendment may be a factor which contributes to the opposing party's prejudice, it does not constitute undue prejudice *per se*. *Ward Elecs. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987) (holding that a denial of plaintiff's motion for leave to amend in order to change theories of recovery was an abuse of discretion absent a finding of futility, bad faith, or prejudice); *Arc/Connecticut v. O'Meara*, No. 3:01CV1871(JBA), 2002 WL

31106383, at *3 (D. Conn. 2002) (amended complaint filed soon after action was commenced broadening the scope of the case resulted in no prejudice); *Jenn-Air Prods. Co. v. Penn Ventilator, Inc.*, 283 F. Supp. 591, 593 (D.Pa. 1968) (holding that Rule 15(a) is to be applied liberally even when the amendment adds an entirely new cause of action). Where a party seeks to add an additional claim, evaluation of prejudice requires consideration of whether the new claim would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). Notice to the nonmoving party of the underlying facts relied upon in the new claim or cause of action weighs against a finding of prejudice to the nonmoving party. *Kreppein v. Celotex Corp.*, 969 F.2d 1424, 1427 (2d Cir. 1992) (holding defendants were not prejudiced by the addition of a claim for damages for pain and suffering in a products liability action as defendants were on notice of the underlying facts relied on).

Keeping in mind the principle that leave to amend should be freely given, it is the non-moving party's burden to demonstrate that it would be unfairly prejudiced by the proposed amendment. *See Evans*, 704 F.2d at 47. Absent an affirmative showing of prejudice, satisfactorily explained lengthy delays are insufficient grounds for denying leave to amend. *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (surveying cases below and holding that a year-and-a-half delay between defendants' answer and motion for leave to file an amended answer did not constitute undue delay absent a finding of undue prejudice to plaintiffs).

In this case, RBC filed its original complaint on October 12, 2007, amended the

complaint on October 24 to add American Software USA, Inc., and moved for leave to file a Second Amended Complaint on June 2, 2008. RBC asserts that it only recently became aware of the facts (including the existence of the "logic bomb") which give rise to its newly raised allegations. With this satisfactory explanation, the seven-month delay is not long enough to justify denying RBC's request for leave to amend without a showing by ASI that it suffered prejudice. *E.g.*, *Richardson Greenshields*, 825 F.2d at 653 n.6.; *Fluor*, 654 F.2d at 855–56 (three-year delay did not bar amendment where no trial date had been set and no motion for summary judgment had been filed by defendants); *Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380, 383 (2d Cir. 1968) (three-year delay did not bar amendment even with notice of trial readiness); *Zeigan v. Blue Cross and Blue Shield*, 607 F. Supp. 1434, 1438 (S.D.N.Y. 1985) (three-year delay did not bar amendment as defendants were unable to show undue prejudice); *Green v. Wolf Corp.*, 50 F.R.D. 220, 223 (S.D.N.Y. 1970) (four-year delay did not bar amendment where trial preparation was under way and all information necessary for amended complaint was known to plaintiff "from the start").

Furthermore, ASI has not established that it has been prejudiced by the delay. In the memorandum opposing leave to amend, ASI focused not on the prejudice it would suffer, but rather on the need to first decide the motion to dismiss or transfer, a position which the Court rejects for the reasons explained above. Therefore, even though the addition of RBC's new claims will broaden the scope of its allegations against ASI—and consequently enlarge the time and expense required for discovery—ASI has not shown how this would be unfairly prejudicial. Accordingly, there is no justification for denying leave to amend on the grounds of prejudice to ASI or delay by RBC.

### 2. Bad Faith or Dilatory Motive

Bad faith or dilatory motive on the part of the movant can also justify denying leave to amend a pleading, *Foman*, 371 U.S. at 182; *Fluor*, 654 F.2d at 856, but this factor requires an affirmative demonstration by the non-moving party, *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283–84 (2d Cir. 2000). ASI has made no such showing here, and the circumstances do not permit bad faith or dilatory motive to be inferred merely from the fact of the seven-month delay. Therefore, this cannot be a ground for denying RBC leave to amend.

### 3. Repeated Failure to Cure Deficiencies by Amendments Previously Allowed

Leave to amend may be denied where previously allowed amendments have repeatedly failed to cure specifically identified deficiencies. *Foman*, 371 U.S. at 182; *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding denial of leave was appropriate as plaintiff's counsel was on "the plainest notice of what was required" and failed to plead accordingly). Here, however, RBC does not seek to cure any previous deficiencies, but rather moves to amend to seek "additional relief." (RBC's Mem. Leave to Amend at 3–6.) This factor is therefore irrelevant to the consideration of RBC's motion for leave to file its Proposed Second Amended Complaint.

### 4. Futility of Amendment

A district court may also deny leave to amend when the proposed amendment would be futile—that is, when it could not survive a Rule 12(b)(6) motion to dismiss. *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002); *see also ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atlantic*

*v. Twombly*, 127 S. Ct. 1955, 1965 (2007), and explaining that "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level'"). Evaluating the Proposed Amended Complaint under this standard, the Court concludes that RBC has pleaded with sufficient specificity the facts and law supporting the claims it seeks to add in its Proposed Second Amended Complaint. ASI has not shown that these new allegations are implausible on their face. Accordingly, leave to amend will not be denied on the basis of futility.

### C. Conclusion

In short, because none of the factors—undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to ASI, or futility of amendment—favor ASI, there is no justification for denying RBC leave to amend. Thus, RBC's Motion for Leave to File Second Amended Complaint is granted.

## III. ASI's Motion to Dismiss or Transfer

### A. Relationship to the Georgia Action

The "general rule" in the Second Circuit is that "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second." *Employers Ins. of Wausau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008); *Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 790 (2d Cir. 1986) (quotation marks omitted). But this first-filed rule is not an "invariable mandate"; grounded in considerations of judicial economy, "[t]he inquiry still requires selection of the more appropriate forum, since the first-filed rule is only a presumption that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action." *Employers*

*Ins.*, 522 F.3d at 275.

ASI offers several arguments in favor of dismissing this litigation or transferring it to Georgia: (1) the two pending actions "involve the same dispute: whether RBC breached the license agreement with the number of users that it had authorized"; (2) the Connecticut action is in fact the second-filed suit because the ASI entities filed the Georgia action before both receiving service and being named in the Connecticut action; (3) the Georgia action is actually the broader of the two because it involves monetary damages; (4) RBC's request for declaratory relief fails to state a claim; (5) the Connecticut action is improperly anticipatory; and (6) Georgia is the fairer and more convenient forum. (ASI's Mem. Dismiss or Transfer at 9–14.)

Contemporaneous with the briefing on this motion, RBC and ASI also raised some of the same issues before the district court in the Georgia action, which granted RBC's motion to dismiss or stay on first-filed grounds as follows:

> In this case, the Connecticut district court received the controversy first. A party objecting to the first filed court's jurisdiction must carry the burden of proving an exception to the rule. . . . ASI first contends that the Connecticut action was not really the first one filed because RBC sued ASI's parent company, American Software, Inc., in Connecticut and not ASI itself [and later amended the complaint to correct this deficiency.] . . .

> Both complaints filed by RBC arise out of the same conduct and circumstances and seek the same relief. The only difference is the addition of ASI as a party, and the court sees no reason why ASI should not have known of the suit when its parent company was the initial defendant, or why it would be prejudiced in defending the action. RBC's amended complaint clearly relates back to its first complaint under Federal Rule of Civil Procedure 15(c). The Connecticut case is the first filed.

(Order, Jan. 11, 2008, at 2–4.) Judge Martin declined to reach the additional question of whether there are "compelling circumstances" to depart from the first-filed rule. (*Id.* at 3–4.)

The Court fully agrees with this analysis.

Subsequently, by moving for leave to amend its complaint, RBC substantially changed the nature and scope of its allegations against ASI. Rather than seeking only declaratory relief, this new amended complaint includes several state- and federal-law causes of action and seeks damages, injunctive relief, costs, and fees. Thus, there is no longer the high degree of similarity between this litigation and the Georgia action which originally existed and formed the basis for ASI's motion to dismiss or transfer. By enlarging its allegations against ASI, RBC's present case here does not present the risk of "duplicative litigations" that would prompt a first-filed inquiry. *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989). Judicial economy is best served by allowing the now much broader action to proceed here in Connecticut so that all of the disputes between the parties can be resolved in a single proceeding.

**B.    Convenience of the Forum**

Even assuming that proceeding through the first-filed analysis is necessary, there is still insufficient justification to deny RBC its choice of forum as the plaintiff. If this litigation remains the first-filed—as the Georgia court previously found—it should be dismissed in favor of the Georgia action only after considering the "balance of convenience," which encompasses the same factors "as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)."[2] *Employers Ins.*, 522 F.3d at 275 (quotation marks

---

[2] The second exception to the first-filed rule is where "'special circumstances' warrant giving priority to the second suit," such as if one party improperly "race[d] to the courthouse[.]" *Employers Ins.*, 522 F.3d at 275 (quotation marks omitted). However, ASI has not demonstrated that forum shopping alone motivated RBC's decision to file its original declaratory-judgment action in Connecticut. Furthermore, the relevance of this exception falls away now that RBC has dropped the request for declaratory relief in favor of much

omitted).  Thus, ASI's alternative grounds for relief merge, and the Court must look to:

> (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*U.S. Surgical Corp. v. Imagyn Med. Techs., Inc.*, 25 F. Supp. 2d 40, 46 (D. Conn. 1998); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006) (summarizing the same factors relevant to the venue analysis).  The Court will address these factors in turn, in the order and form presented by the parties.

### 1.    Locus of Operative Facts

With respect to RBC's request for declaratory judgment concerning the meaning of disputed terms in the parties' licensing agreement, the locus of operative facts favors neither Georgia nor Connecticut given that the contracts were signed in New Jersey and the meaning of those terms is not tied to any particular site.  But the center of gravity for RBC's newly amended complaint is much closer to Connecticut.  The new counts arise out of ASI's alleged planting of a "logic bomb" in software licensed to RBC, disclosure of its presence to RBC, and alleged threats and "bad faith claims" to RBC following this disclosure.  (Prop. Second Am. Compl. 5–7.)  The "logic bomb" was written into the software in Georgia, while the alleged harm, threats and "bad faith claims" were directed towards RBC's operations in Connecticut.  The mainframes on which the software is loaded, the capacities of which are of direct concern to the counts in the Second Amended Complaint, are also located in

_____

broader allegations.

Connecticut. Thus, this factor favors Connecticut as the appropriate venue.

### 2.    *Plaintiff's Choice of Forum*

A plaintiff's choice of forum is ordinarily afforded "great weight," except where the operative facts have little connection with the chosen forum. *Gottdiener*, 462 F.3d at 107. There is a significant connection between the facts alleged in the Second Amended Complaint and the Connecticut forum, and so this factor favors RBC.

### 3.    *Convenience of the Parties and Witnesses*

ASI does not argue for transfer of venue on account of convenience to either the parties or witnesses, claiming an even draw on both factors as each party and its witnesses are located in their respective states of residence (Georgia and Connecticut). RBC argues that these factors weigh in Connecticut's favor because the allegedly most material witness (former RBC Director of Information Technologies John Rossi) lives in Connecticut, is a non-party (as a former employee), and suffers from health concerns that make it inconvenient for him to travel to Georgia. (RBC's Opp'n. Dismiss or Transfer at 13–14.) ASI maintains that RBC has not shown that Rossi will need to testify live at trial even if he is a key witness. (Defs.' Reply Dismiss or Transfer at 8.) Indeed, RBC's argument that ASI's intended deposition of Rossi shows that he will be needed for live testimony fails to recognize the distinction between an intention to depose and the necessity for live trial testimony, only the latter of which factors into the evaluation here. *See A Slice of Pie Prods., LLC v. Wayans Bros. Entm't*, 392 F. Supp. 2d 297, 308 (D. Conn. 2005).

As in *Charter Oak Fire Ins. Co. v. Broan-Nutone, LLC*, 294 F. Supp. 2d 218, 220–221 (D. Conn. 2003), the parties here have provided insufficient detail about the witnesses' expected testimony. Without elaboration, RBC argues simply that Rossi is "perhaps the

single most important witness." ASI similarly provides no detail about the testimony of any material witnesses, arguing instead an equal balance of convenience on this factor. The Court is therefore unable to weigh the materiality of any live testimony and cannot appropriately weigh this factor.

    4.  *Availability of Process to Compel Attendance of Unwilling Witnesses*

    A court "cannot require 'a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed, or regularly transacts business' to appear before it"; this inability to compel the attendance weighs in favor of transfer to a forum where a large number of non-party witnesses reside. *Charter Oak*, 294 F. Supp. 2d at 221 (quoting Fed. R. Civ. P. 45(c)(3)(A)(ii)). ASI did not address this factor in its briefing and RBC has identified the only non-party witness in this action (Rossi). The lack of emphasis on this factor notwithstanding, if the availability of process is to be afforded any weight, that weight must be in favor of Connecticut as the only identified non-party witness in this action would be subject to process in Connecticut but not in Georgia.

    5.  *Location of Relevant Documents and Relative Ease of Access to Sources of Proof*

    "Although the location of relevant documents is entitled to some weight, modern photocopying technology and electronic storage deprive this issue of practical or legal weight." *Charter Oak*, 294 F. Supp. 2d at 221–22. In its briefing, ASI argued that this reality was particularly relevant to the declaratory-judgment action because copies of the license agreement and correspondence between the parties "will be equally located in each state." (ASI's Mem. Dismiss or Transfer at 16.) But the addition of claims regarding the "logic

bomb" allegedly hidden in the software licensed to RBC alters the analysis. The issues regarding the capacity of RBC's mainframe (located in Connecticut), the inclusion of a "logic bomb" in software utilized by RBC, and the dependence of RBC's operation on both the mainframe and this software all point in favor of Connecticut. This factor therefore now weighs significantly in favor of Connecticut as the appropriate forum.

### 6.    Relative Means of the Parties

"The relative financial hardship on the litigants and their respective abilities to prosecute or defend an action in a particular forum are legitimate factors to consider." *Charter Oak*, 294 F. Supp. 2d at 222. But because there is no showing of disparity in relative financial burden, this factor is immaterial to the Court's analysis.

### 7.    Familiarity With Governing Law

While the forum's familiarity with governing law is a relevant factor, "federal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State [and] . . . [a]ccordingly, familiarity of the forum should present no problem." *Pitney Bowes, Inc. v. Nat'l Presort, Inc.*, 33 F. Supp. 2d 130, 132 (D. Conn. 1998). Since application of foreign law—to the extent it will even be necessary in light of RBC's amended allegations—will present no problem to either Georgia or Connecticut as forum, this factor has no impact.

### 8.    Trial Efficiency and Interests of Justice

The interests of justice referenced in § 1404(a) are based on "the totality of the circumstances," are often considered independently from the other factors, "and may be determinative in a particular case." *TM Claims Serv. A/S/O v. KLM Royal Dutch Airlines*, 143 F. Supp. 2d 402, 406 (S.D.N.Y. 2001). ASI has not established that the interests of justice

would be served by transferring this action to the Northern District of Georgia. Given the considerable expanse of the Second Amended Complaint, transfer would not protect against wasted time, energy, or money, nor would it protect the litigants, witnesses and public against unnecessary inconvenience and expense. The Georgia and Connecticut actions no longer contain substantially similar claims and the Connecticut action can no longer be characterized only as an improperly anticipatory declaratory action. Thus, RBC's affirmative claims regarding alleged harm done by ASI to its operations in Connecticut should, in the interests of justice, be allowed to proceed in Connecticut.

9.      *Conclusion*

On balance, these factors weigh in favor of Connecticut as the more appropriate forum, and there is insufficient reason either to transfer this action to Georgia or to dismiss it in favor of the other action already pending in Georgia. Therefore, ASI's motion to dismiss or transfer is denied.

**C.      Motion to Dismiss Claims Against American Software, Inc. for Lack of Personal Jurisdiction**

The final remaining issue is the motion to dismiss RBC's claims against American Software, Inc.—the parent corporation of the two ASI entities—on personal-jurisdiction grounds. "When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). There are two prongs to meeting this burden: the plaintiff must establish both that jurisdiction is permitted under the relevant long-arm statute and that jurisdiction is consistent with due process. *Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566

(2d Cir. 1996). Due process has two components: the defendant must have sufficient "minimum contacts" with the forum, and the exercise of jurisdiction must be fair and reasonable. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Whether the plaintiff seeks to establish specific or general jurisdiction, it must demonstrate "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

ASI moves to dismiss the claims against American Software, Inc. on the basis that American Software, Inc. "did not enter into the contract that is the subject of this action, [] did not send the goods or software that are the subject of this, and it is not alleged to have committed any tort[i]ous conduct in this action." (ASI's Mem. Dismiss or Transfer at 19–20.) This portion of ASI's motion received no substantive response from RBC, apparently due to the parties' attempt to resolve the issue; RBC proposed that it would dismiss American Software, Inc. from the case on the condition that ASI agree to allow RBC to bring American Software, Inc. back in as a defendant if the facts show that American Software, Inc. is the true party in interest. (RBC's Opp'n Dismiss or Transfer at 4–5 n.5.) ASI found this proposal "unacceptable," and there has been no discovery taken on the issue of personal jurisdiction. (ASI's Reply Dismiss or Transfer at 6 n.6.)

Although there has been no jurisdictional discovery at this early stage, the limited record reveals that the invoice for the additional users sent to RBC (referenced in the amended complaint) was addressed from "American Software, Inc." and contained instructions to remit payment to "American Software, Inc." (RBC's Opp'n Dismiss or Transfer, Ex. C). This request for payment of the additional user fee—which is the very act

20

that prompted RBC to file its complaint—is sufficient to satisfy the relevant Connecticut long-arm statute because it concerns the distribution of goods in the state and implicates allegedly tortious conduct in the state. *See* Conn. Gen. Stat. § 33-929(f)(3)–(4). Jurisdiction is also consistent with due process given that, by forwarding this invoice to RBC's Connecticut office, American Software, Inc., "purposefully avail[ed] itself of the privilege of conducting activities within [Connecticut]." *Hanson v. Denckla*, 357 U.S. at 253. This conclusion is further supported by the geographical and managerial similarities shared by the two ASI entities, when only one of them (the parent corporation) objects on personal-jurisdiction grounds. *See, e.g.*, *Hersey v. Lonrho, Inc.*, 807 A.2d 1009, 1013–14 (Conn. App. Ct. 2002) (declining to exercise jurisdiction over a parent corporation upon an evidentiary showing that the subsidiary's shared officers operate in separate capacities).

Therefore, ASI's motion to dismiss the claims against American Software, Inc. for lack of personal jurisdiction is denied.

## IV.    Conclusion

For these reasons, Defendants' Motion to Dismiss or Transfer [Docs. # 19, 21] is denied. Plaintiff's Motion for Leave to File Second Amended Complaint [Docs. # 29, 34] is granted. Defendants' Motion for Extension of Time [Doc. # 31] is granted. Plaintiff shall file its Second Amended Complaint forthwith.

IT IS SO ORDERED.


/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 13th day of August, 2008.